UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 19-159-DLB-CJS

CHARLES GEORGE STEIN                                                                                   PLAINTIFF

v.                              **MEMORANDUM OPINON AND ORDER**

CHRISTOPHER GUNKEL, et al.                                                                         DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

I.  INTRODUCTION

This matter is before the Court on Defendants Christopher Gunkel and Tabatha Sterling's Motion for Summary Judgment. (Doc. # 21). This Motion has been fully briefed, (Docs. # 31 and 34). For the reasons set forth herein, the Motion for Summary Judgment is **GRANTED**.

II.  FACTUAL AND PROCEDURAL BACKGROUND

On or about November 7, 2018, Plaintiff Charles George Stein was arrested and charged with possession of controlled substances and drug paraphernalia. (Doc. # 1 ¶ 12). After his arrest, Stein was housed in the Boone County Detention Center ("BCDC"). (*Id.* ¶ 11). The booking process is based on BCDC's classification policy which include the following relevant classifications: (1) high risk and (2) segregation. After the inmates are classified initially, their classification is reviewed 72 hours after their booking. (*Id.* at 5). An inmate is classified as high risk if they "are considered to be suicidal, or require special medical or mental health needs," and are placed in single cell housing. (*Id.* at 7).

1

Alternatively, an inmate is placed in the segregation classification if they "are considered assaultive toward staff or other inmates, require protective custody, or are assigned by disciplinary review." (*Id.*).  The segregation classification also requires that the inmate be placed in single cell housing, for at least the 72 hours before the second classification occurs.  (*Id.* at 8-9).  During Stein's booking, Defendant Tabatha Sterling classified Stein as high risk due to Stein stating, "I want to die, just kill me, I don't care about living anymore."  (Docs. # 1 ¶¶ 16-17 and 21-5 at 1).  Stein was temporarily held for approximately twelve hours before being moved to a detox cell by Defendant Christopher Gunkel.  (Docs. # 1 ¶¶ 17-18 and 21-4 at 1-2).  A detox classification is separate from the original classification determination.  (Doc. # 27 at 23).  A nurse at BCDC would assess an inmate who was previously placed in the high risk classification due to suicidal thoughts and decide if he was cleared to be placed in general population or in a detox cell.  (*Id.*).  An inmate placed in a detox cell is placed with other inmates.  (Doc. # 24 at 6).  When moving an inmate into a detox cell, the officer assigning them to the new cell can access the jail management system which provides an inmate's criminal history, answers to booking questions, and other relevant information.  (*Id.* at 7).

Around the same time Stein was brought into BCDC, another arrestee, Jordan Webster, was booked following his arrest for menacing and resisting arrest.  (Docs. # 1 ¶¶ 19-20 and 31-3).  Webster was previously admitted to the Emergency Room at Saint Elizabeth Florence for a mental health evaluation where he attempted to assault a guard at the hospital.  (Docs. # 1 ¶¶ 21-23 and 31-4 at 1).  After charging the guard, Webster was grabbed by an officer and attempted to resist arrest.  (Docs. # 1 ¶ 24 and 31-4 at 1).  When booked into BCDC, Webster was placed in a high risk mental health hold.  (Docs.

2

# 1 ¶ 27 and 31-4 at 1). Defendants had access to the citation accompanying Webster's arrest, which described his behavior at Saint Elizabeth, and that Webster had an outstanding warrant for assault and was known to exhibit violent tendencies. (Docs. # 1 ¶¶ 28-29 and 31-4 at 2-3). During Webster's booking, Defendant Sterling classified him as high risk, (Doc. # 21-14 at 1), and four hours later, Defendant Gunkel updated Webster's classification from pre-classification to high risk. (*Id.* at 2). Webster was placed in a detox cell with Stein on the evening of November 7, 2018 by a different officer, who is not a party to this action. (Docs. # 1 ¶ 30 and 21-14 at 3).

Around 8:00 p.m.[1] on November 7, 2018, Webster violently assaulted Stein while he slept. (Docs. # 1 ¶ 33 and # 21-12 at 1-2). Another cellmate alerted guards to stop the assault. (Docs. # 1 ¶ 34 and 21-12 at 1). Stein was transported to the emergency room at St. Elizabeth's and was treated for a traumatic brain injury, orbital wall fracture, nose fracture, finger fracture, contusions, post-concussion syndrome, emotional distress, and lacerations. (*Id.* ¶¶ 36-37). As a result, Stein suffers from memory problems, pain, and emotional distress. (*Id.* ¶ 37). After Webster's assault of Stein, Webster was reclassified into the segregation classification. (Doc. # 21-14 at 4).

### III. ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

[1] The Complaint alleges that the incident occurred at 10:00 p.m., but the incident report states that the incident occurred at 8:00 p.m. (Doc. # 21-12 at 1).

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)). In deciding a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

### B. 42 U.S.C. § 1983 Deliberate Indifference Claim

42 U.S.C. § 1983 states that any "person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." To make out a claim under § 1983, a plaintiff must show: "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). Here, Plaintiff asserts that he was deprived of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. (Doc. # 1 ¶¶ 39-40, 44).[2] The Supreme Court has recognized that the Eighth

---

[2] A pretrial detainee's rights, like Stein, are protected by the Fourteenth Amendment's Due Process clause, which entitles pretrial detainees "to the same Eighth Amendment rights as other inmates." *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016) (quoting *Thompson v. Cty. Of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994). Therefore, the standard laid out in *Farmer v. Brennan*, 511 U.S. 825 (1994), "although rooted in the Eighth Amendment . . . applies with equal force to a pretrial detainee's Fourteenth Amendment claims." *Id.* (citing *Ruiz-Bueno v. Scott*, 639 F. App'x 354, 358 (6th Cir. 2016)).

Amendment requires prison officials, such as those working at BCDC on the night Stein was attacked, "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).³ However, not "every injury suffered by one prisoner at the hands of another [] translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

Until September of this year, to sustain a § 1983 claim on a theory of deliberate indifference, a pretrial detainee had to meet both an objective and subjective component. *Lamb v. Howe*, 677 F. App'x 204, 208 (6th Cir. 2017). Under the objective component, plaintiffs had to show that "the official was deliberately indifferent 'to a substantial risk of serious harm' to the inmate." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 828). To meet the subjective component, plaintiffs had to demonstrate "that (1) 'the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner,' (2) the official 'did in fact draw the inference,' and (3) the official 'then disregarded that risk.'" *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016) (quoting *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)).

In September of 2021, the Sixth Circuit modified the subjective component. Now, to sustain a § 1983 claim on a theory of deliberate indifference, the pretrial detainee must prove either that the official "acted [or failed to act] intentionally to impose the alleged

---

³ Plaintiff advocates for the application of the standard set out in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), rather than the one set out in *Farmer*. (Doc. # 31 at 12-14). In *Kingsley*, which involved an excessive force claim by a pre-trial detainee against officers at a jail, the Supreme Court determined that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396. The Sixth Circuit clarifies the standard for pretrial detainees in *Brawner v. Scott Cty., Tennessee*, 14 F.4th 585 (6th Cir. 2021) discussed below.

5

condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee, even though the official knew, or should have known, that the condition posed an excessive risk to health or safety." *Brawner v. Scott Cty., Tennessee*, 14 F.4th 585, 597 (6th Cir. 2021) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)) (alterations in original). Unlike the Eighth Amendment, an official can violate a pretrial detainee's Fourteenth Amendment rights without "meting out any punishment." *Id.* at 596. The "Due Process Clause can be violated when an official does not have *subjective* awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." *Id.* (emphasis added). Other district courts have interpreted the subjective component of the standard to now impose a "knew or should have known" civil standard of liability. *Sowah v. Greenlaw*, No. 1:21-CV-218-CEA-SKL, 2021 WL 4786378, at *3 (E.D. Tenn. Oct. 13, 2021) ("It is a 'knew or should have known' civil standard of liability.") (citations omitted); *Huntley v. Fuller*, No. 1:21-CV-350, 2021 WL 4621777, at *6 (W.D. Mich. Oct. 7, 2021) (knew or should have known standard of disregard). Thus, *Brawner* stands for the proposition that Defendants must have either intentionally placed Stein in danger or recklessly disregarded a substantial risk of harm of which they knew or should have known.

Here, neither Defendant Gunkel nor Sterling acted recklessly in the face of an unjustifiably high risk of harm to Stein. First, Gunkel did not make *any* classification change to Webster's status since he was on suicide watch; he simply updated the information listed because another officer forgot to change Webster's status after his initial classification. (Doc. # 24 at 8). Further, Gunkel states that in a situation like this, he would not have reviewed any of Webster's booking information nor could he change

6

the classification since he was on suicide watch. (*Id*.). As such, Gunkel could not have done anything to mitigate the risk of harm to Stein nor put him in any danger.

Defendant Sterling's initial classification of Webster was "high risk" because he made suicidal statements. (Doc. # 27 at 27-28). High risk inmates are placed in single cell housing with restricted programming and privilege eligibility. (Doc. # 21-1 at 7). Ten hours after Sterling's shift, Sergeant Berry reclassified Webster from "high risk" to "detox," and placed him in Stein's cell. (Docs. # 21-9 and 27 at 31). Sterling could not have recklessly disregarded the risk nor failed to mitigate the risk to Stein when Webster was reassigned while she was not even at work. Further, her initial classification segregated Webster from other inmates; she had no control over that classification once she left.

Even when viewing the facts in a light most favorable to Plaintiff, Stein cannot make out a deliberate indifference claim. Even if he could, qualified immunity shields Defendants from liability in this case.

**C.   Qualified Immunity**

An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was "'clearly established'" at the time of the challenged conduct. *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). And a "defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id*. (citing *al-Kidd*, 563 U.S. at 741). If "judges disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999). "As a matter of public policy,

7

qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335 (1986).

First, neither Gunkel nor Sterling were plainly incompetent or knowingly violated the law. Gunkel was simply executing an administrative task by updating Webster's classification. (Doc. # 24 at 8). If anything, he was remedying the mistake of another officer who failed to adequately label Webster's current status in the tracking system. Gunkel did not violate any established law by updating the status of an inmate from a previous classification because he did not and could not alter it. (*Id.*). Likewise, Sterling was not incompetent nor knowingly violating the law when she classified Webster as high risk. (Doc. # 27 at 27-28). Sterling was ensuring that Webster was not a danger to himself or others when she placed him on suicide watch. (*Id.*). Accordingly, qualified immunity would shield Defendants' actions from § 1983 liability.

Even so, Stein must prove that both Gunkel and Sterling's actions violated clearly established law at the time of his classification in 2018. While it is clearly established that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners," not "every injury suffered by one prisoner at the hands of another [] translates into constitutional liability for prison officials." *Farmer*, 511 U.S. at 833-34 (citations omitted). The defendant must show that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834 (citations omitted). The mental state requirement to hold an official liable is deliberate indifference. *Id*. As noted above, *Brawner* has now established that the defendant must have acted either intentionally or recklessly failed to act with reasonable care to mitigate the risk even though the defendant knew or should have known of the risk to the detainee. 14 F.4th at 597 (quoting *Darnell*,

8

849 F.3d at 35).

However, *Brawner* was decided in 2021, three years after the incident that gave rise to this matter. 14 F.4th at 585; (Doc. # 1 ¶¶ 11-12). Therefore, either (1) the law was not clearly established or (2) *Brawner* cannot control in this case. *See Beck v. Hamblen Cty., Tennessee*, 969 F.3d 592, 601 (6th Cir. 2020) (noting that an unresolved question of law cannot qualify as "clearly established law" under the qualified immunity test and assuming the *Farmer* standard applies otherwise).

If the law was not clearly established, then neither Gunkel nor Sterling could have violated Stein's rights and qualified immunity bars Stein's claims against them. If *Brawner* does not control, then the *Farmer* test would apply to this case.

### 1. Farmer Analysis

Under *Farmer*, to sustain a § 1983 claim on a theory of deliberate indifference, the plaintiff must meet both an objective and subjective component. *Lamb*, 677 F. App'x at 208. Under the objective component, the plaintiff must show that "the official was deliberately indifferent 'to a substantial risk of serious harm' to the inmate." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 828)). To meet the subjective component, the plaintiff must demonstrate "that (1) 'the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner,' (2) the official 'did in fact draw the inference,' and (3) the official 'then disregarded that risk.'" *Richko*, 819 F.3d at 915 (quoting *Rouster*, 749 F.3d at 446).

### A. Objective Component

To succeed on the first component of the *Farmer* standard, Plaintiff must show that Defendants were deliberately indifferent to a substantial risk of harm to Stein. *Greene*,

9

361 F.3d at 294.  This risk of harm "caused by the conditions of confinement must have been, objectively, sufficiently serious to require constitutional protection." *Lamb*, 677 F. App'x at 208 (citing *Farmer*, 511 U.S. at 834).  This risk has been found in a variety of situations, including being beaten without cause by a prison guard, *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001), and more similarly to the case at hand, being housed with an inmate who has previously demonstrated a proclivity for violence and a history of mental illness, *Richko*, 819 F.3d at 916.

However, in *Richko* the plaintiff was *housed* with an inmate, not temporarily placed in holding with the other inmate like Stein was with Webster.  819 F.3d at 911-12.  Once Webster was at BCDC, he did nothing to indicate that he posed a substantial risk of serious harm to the other inmates.  As both Sterling and transporting officer Vaske noted, Webster was calm when he was booked, there was no indication that he was assaultive, and "he didn't really talk the whole way to jail."  (Docs. # 27 at 25 and 26 at 8).  However, Sterling did find that Webster was suicidal during booking and in fact classified him as high risk, where he was housed alone, so even if he was an objectively substantial risk of harm to others, Sterling did not take any action subjecting any other inmate to that risk.  (Doc. # 27 at 27-28).  Again, Gunkel could not have addressed *any* risk that Webster may have posed to other inmates as he was on suicide watch and not allowed to be reclassified per BCDC's policy.  (Doc. # 24 at 8).

      **B.**    ***Subjective Component***

"A fact finder may infer" that an official had actual knowledge of the risk through circumstantial evidence or "may conclude a prison official knew of a substantial risk from the very fact that the risk was obvious." *Curry*, 249 F.3d at 506 (quoting *Farmer*, 511 U.S.

10

at 848). Liability can be established by showing that the correctional officer "refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Farmer*, 511 U.S. at 843 n.8.

In *Richko*, the court found that an official was aware of an inmate's risk of substantial harm to other inmates when the official (1) was aware of the inmate's self-reported history of mental illness, (2) knew that the inmate had not taken his medication for these conditions for six days, (3) knew that the inmate had been arrested the day before for attempted assault with a dangerous weapon, (4) knew that the inmate had been hospitalized six times for his mental illnesses, and (5) discovered that the inmate had 2,334 prior encounters with mental-health services. 819 F.3d at 907. While considering the subjective awareness of another defendant, the court noted that "the key issue here is [] whether, during the relevant time period . . . there is any evidence showing that [the defendant] heard the assault taking place and chose not to respond." *Id*. at 919. The court found that the defendant, who was on duty at the time, likely heard the assault taking place. *Id*. at 919-20.

Under either formulation, neither Sterling nor Gunkel could be found to have been subjectively aware of the risk that Webster may have posed to Stein. First, unlike the official in *Richko* who had several categories of information relating to the inmate's mental health issues and violent tendencies, Gunkel did not look at, nor was he made aware through other means, of Webster's previous assault or difficulty with his arrest. (Doc. # 24 at 8). Gunkel was simply changing Webster's status because someone else "had forgot to change it from pre-classification to high risk." (*Id*.). Even if Gunkel was aware of Webster's previous assault, Gunkel could do nothing to reclassify Webster because he

11

was on suicide watch so he "could not have made any movement until [Webster] was cleared from mental health." (*Id*.).  Further, unlike *Richko* where one defendant was on duty during the assault, Gunkel could not have been aware of Webster's assault on Stein as Gunkel was off-duty hours before the two inmates were even placed in the same cell. (Docs. # 24 at 6 and 21-9); *Richko*, 819 F.3d at 919.  Gunkel cannot be held liable for the actions of the other officer who changed Webster's classification.  *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002*)* ("It is well settled that § 1983 liability will not be imposed solely on the basis of respondeat superior.") (citations omitted).

Defendant Sterling was also off duty before Stein and Webster were placed in the same cell.  (Doc. # 27 at 31).  Further, Sterling did not see the note that labeled Webster as someone with "violent tendencies."  (*Id*. at 25-26).  While Sterling was aware that Webster had been involved in some struggle, she was not aware at the time of booking that Webster had been involved in a fight with one of the arresting officers.  (*See id.* at 28-29).  Even if the risk Webster posed to other inmates was obvious, Sterling was not responsible for Webster's movement into a cell with Stein.  She originally classified Webster as high risk and placed him in a cell alone.  (*Id.* at 27-28).  The decision to move Webster from high risk to detox, with Stein, was made by another officer.  (Doc. # 21-9). Therefore, Sterling cannot be held liable for the actions of the non-party officer who placed the two inmates in the same cell that led to the assault underlying this matter.  *Combs*, 315 F.3d at 558 (citations omitted).

As such, even under the *Farmer* test for deliberate indifference, Stein's claims fail.

12

## IV. CONCLUSION

Thus, for the reasons articulated herein, **IT IS HEREBY ORDERED** as follows:

(1) Defendants' Motion for Summary Judgment (Doc. # 21) be, and is hereby **GRANTED**;

(2) This matter is **DISMISSED with prejudice** and **STRICKEN** from the Court's active docket;

(3) Plaintiff's Motion for Leave to File Supplemental Authority in Support of Response to Motion for Summary Judgment (Doc. # 35) is hereby **GRANTED**; and

(4) The Court will enter a corresponding Judgment with this Order.

This 2nd day of November, 2021.

Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Cov2019\19-159 Order Granting MSJ.docx